# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:23-cv-01397-CNS-NRN

KYLE LEWIS,

      Plaintiff,

v.

MESA COUNTY VALLEY SCHOOL DISTRICT 51,
TAMMY ERET, in her individual capacity,
TIM LEON, in his individual capacity,
BRIAN DEGRANGE, in his individual capacity,

      Defendants.

---

## FIRST AMENDED COMPLAINT AND JURY DEMAND

---

Plaintiff Kyle Lewis, by and through his counsel, Andy McNulty of KILLMER, LANE & NEWMAN, LLP, hereby submits his First Amended Complaint and Jury Demand, and states as follows:

## INTRODUCTION

1.     Over fifty years ago, the Supreme Court of the United States held that profanity is fully protected by the First Amendment to the United States Constitution. In doing so, it poetically stated that the freedom of speech carries with it "necessary side effects of the broader enduring values which the process of open debate permits us to achieve." *Cohen v. California*, 403 U.S. 15, 25 (1971). "That the air may at times seem filled with verbal cacophony is, in this sense not a sign of weakness but of strength." *Id.* "We cannot lose sight of the fact that, in what

otherwise might seem a trifling and annoying instance of individual distasteful abuse of a privilege, these fundamental societal values are truly implicated." *Id.* Therefore, speech by peaceful means "'need not meet standards of acceptability.'" *Id.* "The ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is ... dependent upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner." *Id.* at 21. "Any broader view of this authority would effectively empower a majority to silence dissidents simply as a matter of personal predilections." *Id.* There is simply no compelling justification to restrict all speech that involves "offensive" or "coarse" language. *Id.* at 25

2.       Plaintiff was cited and subjected to a malicious prosecution by a Grand Junction Police Department ("GJPD") officer (Brian DeGrange), an attorney with Defendant Mesa County Valley School District 51 (Defendant "District") (Tammy Eret), and a security officer with Defendant District (Tim Leon) because he dared to protest Defendant District's decision to not allow him to participate in his special needs children's education and, in doing so, used language that was profane. Instead of accepting that the Constitution (and well-established First Amendment authority from the Supreme Court) protects profanity, Defendants decided to retaliate against Plaintiff. They conspired to charge him with a bogus crime and banned him from Defendant District's property simply because he was engaged in constitutionally-protected speech and petitioning activity. Their actions violated Mr. Lewis' constitutional rights.

3.       Mr. Lewis, a veteran, took an oath to defend the Constitution against all enemies, foreign and domestic. Defendants are the domestic enemies to the Constitution that Mr. Lewis

was sworn to defend. They would prefer censorship to freedom of speech, and Mr. Lewis brings this lawsuit to hold them to account.

## JURISDICTION AND VENUE

4.     This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331.

5.     Jurisdiction supporting Plaintiff's claim for attorney fees and costs is conferred by 42 U.S.C. § 1988.

6.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State at the time of the events giving rise to this First Amended Complaint.

7.     Supplemental pendent jurisdiction is based on 28 U.S.C. § 1367 because the violations of federal law alleged are substantial and the pendent causes of action derive from a common nucleus of operative facts.

## PARTIES

8.     At all times relevant to this First Amended Complaint, Plaintiff Kyle Lewis was a citizen of the United States of America and a resident of the State of Colorado.

9.     Defendant Mesa County Valley School District 51 is a public school system located in the Mesa County that is funded, in part, by Mesa County taxpayers and governed by elected officials. Defendant Leon has been delegated final policymaking authority by Defendant District as to excluding individuals from school property.

10.     At all times relevant to this First Amended Complaint, Defendant Tammy Eret was a citizen of the United States and resident of the State of Colorado. At all relevant times, Defendant Eret was acting within the scope of her official duties and employment and under color of state law in her capacity as an official with Defendant District.

11.     At all times relevant to this First Amended Complaint, Defendant Tim Leon was a citizen of the United States and resident of the State of Colorado. At all relevant times, Defendant Leon was acting within the scope of his official duties and employment and under color of state law in his capacity as an official with Defendant District. Defendant Leon is the Director of Safety and Security for Defendant District.

12.     At all times relevant to this First Amended Complaint, Defendant Brian DeGrange was a citizen of the United States and resident of the State of Colorado. At all relevant times, Defendant DeGrange was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer for GJPD. Defendant DeGrange is a peace officer employed by a local government and, therefore, is subject to suit under C.R.S. § 13-21-131.

## FACTUAL ALLEGATIONS

13.     Mr. Lewis is a passionate advocate for his children, and their education. Mr. Lewis has two special needs children. Mr. Lewis' sole goal is to participate in his children's education and to be informed about it. Both of his children attend schools in Defendant District.

14.     Defendant District refused to allow Mr. Lewis to attend Individualized Education Plan ("IEP") meetings apart from his ex-wife, which effectively prevented him from attending these meetings given that, as a term of their divorce, Mr. Lewis is not allowed to be in the same

4

room as his ex-wife. Since September of 2022, Defendant District has refused to allow Mr.

Lewis to attend the IEP meetings. Mr. Lewis wishes to learn about the therapy that is being

provided to his special needs children so that he can provide the same, or similar, therapies at

home. He is a loving dad who simply wants the ability to do the best for his children.

      15.     The actions of Defendant District led to Mr. Lewis speaking out and petitioning,

via email, for a change in their policy of effectively refusing to allow him, and other single

fathers, the ability to participate in their children's education. Mr. Lewis engaged in this speech

to advocate for all single fathers in Defendant District who had been restricted from participating

in their children's education. After being denied access to information, Mr. Lewis began to send

Colorado Open Records Act ("CORA") requests to Defendant District. He sought the same

information that he had been requesting since the summer of 2022 about his children's

education, including information about their policies that prevented him from having separate

IEP meetings with his children's educators. Defendant District denied a number of these

requests, and charged exorbitant fees related to others.

      16.     Having been stonewalled again, on June 9, 2022, Mr. Lewis protested in front of

the headquarters of Defendant District on Grand Avenue in Grand Junction, Colorado.

Importantly, children are not present at the headquarters of Defendant District and no instruction

occurs at this building. Mr. Lewis held a sign that stated, "SCHOOLS HATE SINGLE DADS |

WE HAVE RIGHTS". During his protest, Mr. Lewis remained on the public sidewalk. Mr.

Lewis was standing away from the entrance to the building and was not impeding any traffic or

access to the building. While Mr. Lewis was protesting, he was confronted by two GJPD

officers. One of the officers, after speaking with Defendant District's security, told Mr. Lewis

that he was allowed to continue protesting on the public sidewalk in the manner that he had been protesting and then the officers left.

17.     Meanwhile, Mr. Lewis continued to submit CORA requests, via email, to Defendant District and began protesting, via email, Defendant District's stonewalling of his requests and misuse of CORA to charge him exorbitant fees for accessing public records.

18.     Eventually, on September 6, 2022, Tammy Eret, an attorney with Defendant District, responded that she wished that the emails be sent directly to her. Defendant Eret, from her first communication, demonstrated that she would be continuing to misuse the open records laws to stymie Mr. Lewis. Defendant Eret also displayed her contempt for the First Amendment by incredulously stating that Mr. Lewis' CORA requests and emails protesting the misuse of the CORA laws constituted abuse of Defendant District's personnel.

19.     Later on September 6, 2022, Mr. Lewis then sent an email with the following First Amendment-protected criticism of public officials, including Defendant Eret, by calling them "fucking stupid" and protesting their use of the open records laws to charge him exorbitant costs for obtaining records about his children's education. Those emails are embedded below:

Weird. you have to give me all the special education records surrounding the IEPs free of charge regardless of how much time it takes.

And I've done extensive research and a records request is a singular thing and lumping them together is not something that is come and practice and using records requests from more than a week ago at this point nearly 2 weeks ago and saying that was my free hour is ridicµlous and you guys will be explaining this to the state so.

Also remember., I have a first amendment right to call you people fucking stupid because you are fucking stupid.

> Also the prior requests that you claim I/O $60 for some of them have been charged in a way that is not in connection with district policy or Quora so we're gonna just have to hash that out in court I guess because you can't charge me for the first hour and if something takes an hour and five minutes you can charge me $30 per hour for that last five minutes you can use a record request from weeks ago in order to charge me $30 for a new record request that's literally fucking stupid. and that's exactly why I'm calling you people fucking stupid because you are fucking stupid.

20.     In response, Defendant Eret threatened Mr. Lewis and, again, purposefully mischaracterized the emails above, which were protected free speech and petitioning activity, as threatening, intimidating, and harassing.

21.     Mr. Lewis then sent a number of emails in response, explaining to Defendant Eret that Mr. Lewis has a First Amendment right to call Defendant District's employees "fucking stupid" and that this speech could not be construed as a threat. Mr. Lewis also sent Defendant Eret calling Defendant District "a bunch of grimy cunts" while informing her that he would continue to protest and express himself to the government, and its employees, using any language that he preferred as long as he was doing so in a way that was not disruptive to the school.  Those emails are embedded below:

> Idk where you think you're going with that* sorry. Voice to text.
>
> This is gonna be my last email to you about any of this but good fucking luck. The district, namely you, is/ are bunch of GRIMY fucking cunts who want to prevent me, a Parent, from participating in their children's education and i wont stand for it.
>
> I will protest and theres nothing you can do to stop me.
> I will express my grievances to THE GOVERNMENT AND THEIR EMPLOYEES in anyway i see fit. I will file complaints or take appropriate legal action  against anyone who i have a legal argument against.
>
> I will not and have never done anything against the law towards the school district or their personnel. Feeling dont trump rights. And someone else's assumptions about me or my intent doesnt change the fact that I haven't done anything wrong.
>
> You cant stop me. You might be able to lie, misrepresent facts, or other unethical things but thats about all you could do to try to stop me.
>
> Good luck.

I legit dare you to try to ban me from the district property or some shit for me using non threatening language (calling you people fucking stupid or a grimy cunt, or protesting with a sign, or doing records requests) to express my grievances to the district, aka the government. Go ahead. I dare you. Because then I will get a really really good opportunity to hold you people accountable for trying to limit my ability to participate in my children's education and show what kind of people you are. as an attorney you should obviously know that as long as I'm not down there in the building yelling and screaming calling people names or something like that I can say pretty much whatever I want as long as I'm not threatening you or using fighting words or whatever. just like I could call any president fucking stupid or any politician fucking stupid as long as I'm not doing it in a way where the children can hear me or something actually illegal you can't stop me.

22.     All of the emails sent by Defendant Eret and Mr. Lewis occurred on September 6, 2022.

23.     Instead of responding to these emails appropriately, or simply ignoring them, Defendant Eret took action to retaliate against Mr. Lewis. She did this to silence his critical speech.

24.     Defendant Eret almost immediately spoke to the security supervisor for Defendant District, Tim Leon, who called GJPD Officer Brian DeGrange. Defendant DeGrange is the school resource officer for Defendant District and has a close relationship with Defendant Eret and Defendant Leon. Defendant Leon falsely told Defendant DeGrange that Mr. Lewis had emailed Defendant Eret using "obscene" language, and noted that Mr. Lewis was upset with Defendant District over its policies and how they were affecting Mr. Lewis' children and their education. Defendant Leon set up a meeting between Defendant Eret and Defendant DeGrange to ensure that Mr. Lewis was subjected to retaliation for speaking out and petitioning his government for redress of grievances.

25.     On September 14, 2022, Defendant DeGrange went to Defendant Eret's office to meet with her. Defendant Eret told Defendant DeGrange that she wanted to file charges against Mr. Lewis based the emails described above. Defendant Eret admitted to Defendant DeGrange

that Mr. Lewis' use of the word "cunt" caused her to pursue the charges against him. Defendant Eret then forwarded a copy of the emails to Defendant DeGrange, who reviewed them.

26.     The next week Mr. Lewis sent Defendant Eret a few additional emails criticizing her and Defendant District for their handling of his ability to attend meetings with his children and his open records requests. One of the emails that Mr. Lewis sent told Defendant Eret to "go fuck" herself. Defendant Eret forwarded that email to Defendant DeGrange with the purpose of ensuring that Mr. Lewis was arrested and prosecuted for petitioning her for redress of his grievances.

> "Mind you I understand that you are allowed to charge research fees after the first hour for each request but the way youre doing it, in my opinion and others, seems to be with the intent of charging me money in order to prevent me from getting records. The department of education will have to decide the final opinion but that will happen in due time.
>
> Go fuck yourself."

27.     This email was sent by Mr. Lewis on or about September 27, 2022.

28.     After receiving the emails from Defendant Eret, and even after speaking with Mr. Lewis, Defendant DeGrange and Defendant Eret conspired to arrest Mr. Lewis for engaging in First Amendment-protected activity with the goal of silencing him.

29.     On September 27, 2022, Defendant DeGrange contacted Mr. Lewis to speak with him on September 27, 2022. During that interview, Defendant DeGrange told Mr. Lewis he was calling him relating to his emails to Defendant Eret. In response, Mr. Lewis told Defendant DeGrange that the emails to Defendant Eret were made to her as a member of the government and that, in emailing her, Mr. Lewis was expressing his grievances.

30.     Ultimately, Defendant DeGrange charged Mr. Lewis with Harassment under C.R.S. § 18-9-111(e). Defendant DeGrange wrote in his probable cause statement that Mr. Lewis was being charged for sending Mr. Eret emails with "obscene" comments. The phrases that

Defendant DeGrange considered obscene were "fucking stupid", "grimy cunts", and "go fuck yourself." Defendant DeGrange charged Mr. Lewis with harassment despite Mr. Lewis' explicit statements to Defendant DeGrange that, by sending the emails, he was petitioning his government for redress of grievances.

31.     Defendant DeGrange eventually met with Mr. Lewis and issued him a summons and citation for Harassment on September 30, 2022.

32.     There was no basis to charge Mr. Lewis with Harassment. Under the plain language of the statute, Mr. Lewis' communications could never have been rationally interpreted as "obscene." Pursuant to C.R.S. § 18-9-111(e), a person commits the crime of harassment when he "[d]irectly or indirectly initiates communication with a person or directs language toward another person, anonymously or otherwise, by telephone, telephone network, data network, text message, instant message, computer, computer network, computer system, or other interactive electronic medium in a manner intended to harass or threaten bodily injury or property damage, or makes any comment, request, suggestion, or proposal by telephone, computer, computer network, computer system, or other interactive electronic medium that is obscene[.]" The statute later defines "obscene" as "a patently offensive description of ultimate sexual acts or solicitation to commit ultimate sexual acts, whether or not said ultimate sexual acts are normal or perverted, actual or simulated, including masturbation, cunnilingus, fellatio, anilingus, or excretory functions." C.R.S. § 18-9-111(1.5).

33.     Clearly, Mr. Lewis was not using the words "cunt" and "go fuck yourself" in a sexual manner. Defendant DeGrange knew that Mr. Lewis' speech was not criminal and Defendant Eret, as a former District Attorney and Grand Junction Municipal Court Judge, was

also aware that Mr. Lewis' language could not constitute obscenity or be the basis for the crime of Harassment.

34.     The only basis for Mr. Lewis' citation and prosecution was the bare desire by Defendant Eret, Defendant Leon, and Defendant DeGrange to silence him and retaliate against him for engaging in First Amendment-protected activity.

35.     Mr. Lewis endured the specter of prosecution for two months until the charges against him were eventually dismissed. The charges were dismissed because there was no probable cause to charge Mr. Lewis with harassment. Being under the threat of criminal charges caused Mr. Lewis substantial emotional distress.

36.     After conspiring to unconstitutionally charge Mr. Lewis with Harassment, Defendant Leon and Defendant Eret continued to retaliate against Mr. Lewis in another way: by banning him from Defendant District's property.

37.     On the morning of October 4, 2022, Mr. Lewis decided to protest outside of Defendant District's Basil T. Knight Administration Building. Mr. Lewis went to the Basil T. Knight Administration Building because it houses the special education department for Defendant District and Mr. Lewis wanted to directly protest their refusal to allow him to participate in his special needs children's education. Importantly, children are not present at the Basil T. Knight Administration Building and no instruction occurs at this building.

38.     Mr. Lewis stood outside of the Basil T. Knight Administration Building on the public right of way, which was the equivalent of a sidewalk as there was no sidewalk along that street, and next to a monument to Basil T. Knight. Mr. Lewis was standing far away from the

entrance to the building and was not impeding any traffic or access to the building. The street

that Mr. Lewis stood adjacent to, Westgate Drive, connects to the street grid.



(Mr. Lewis' location is indicated by the red star on these maps)



39.     Mr. Lewis held a sign that stated "DISTRICT 51 | FUCK YOU | LET ME BE A FATHER | My Kids Deserve My Participation In Their Education!" while wearing a t-shirt that stated "School District 51 HATES PARENTAL RIGHTS" on it. Mr. Lewis was initially wearing a jacket covering this shirt, but removed it. He was also filming. He did not chant or yell, but stood silently. Mr. Lewis peacefully protested for a while. At one point a few passerbys stopped and spoke with Mr. Lewis about his protest. Mr. Lewis respectfully spoke with these individuals about the issues he was encountering with Defendant District and those caused to single fathers by Defendant District's policies. Mr. Lewis protested for a few hours and then left without incident. At no point did Mr. Lewis interfere, harass, or disrupt anyone or anything.

40.     The very next morning, on October 5, 2022, Defendant Leon sent Mr. Lewis the Exclusion Notice via email, which banned him from Defendant District's property (other than his children's school). The Exclusion Notice was issued because Mr. Lewis had sent the emails to Ms. Eret and was protesting at public places near Defendant District's administrative buildings. The Exclusion Notice was issued by Defendant Leon because he had been delegated final

policymaking authority as to the exclusion of individuals from Defendant District's property. The letter was authored on Defendant District's letterhead and cited one Defendant District policy, KFA, and one Defendant District regulation, KFA-R, as the basis for Mr. Lewis' exclusion from Defendant District's property.

41.     As outlined in the Exclusion Notice, Policy KFA and Regulation KFA-R gave Defendant Leon, as the Director of Safety and Security, the authority to issue the exclusion notice for using profanity. Defendant Leon, in accordance with this policy and the authority he was granted as a delegated final policymaker, issued the Exclusion Notice simply because Mr. Lewis used profanity in his emails to Defendants and on his signs during peaceful protests on public property near Defendant District's administrative buildings. Accordingly, the application of these policies to Mr. Lewis' speech and petitioning was the cause of his exclusion from Defendant District's property and the violation of his constitutional rights.

42.     Moreover, the Superintendent for Defendant District, Brian Hill, was carbon-copied on the Exclusion Notice along with Defendant District's Site Director of Schools, Terri Requa. Upon information and belief, Defendant District's Superintendent and Site Director of Schools were consulted regarding the Exclusion Notice and approved of it.

43.     During the afternoon of October 5, 2022, Mr. Lewis decided to again protest outside of Defendant District's Basil T. Knight Administration Building. He stood in the same location as the previous day, carried the same sign, and wore the same t-shirt. While Mr. Lewis stood outside, a passing driver stopped to speak with Mr. Lewis. Mr. Lewis had a pleasant conversation with the passing motorist about his protest.

44.     As Mr. Lewis spoke with the motorist, Defendant Leon approached Mr. Lewis. Mr. Leon attempted to hand Mr. Lewis a copy of an Exclusion Notice, which banned him from Defendant District's property (as outlined below). Mr. Lewis refused to engage with Defendant Leon and continued to stand in the same location with his sign. Defendant Leon's actions make clear that the Exclusion Notice was issued, in part, to retaliate against Mr. Lewis for engaging in peaceful protest at public places near Defendant District's property.

45.     Later, Defendant DeGrange arrived. Mr. Lewis spoke respectfully with Defendant DeGrange while telling Defendant DeGrange that he had a right to protest. Mr. Lewis told Defendant DeGrange that he would leave if Defendant DeGrange threatened to arrest him, but that, absent threat of arrest, that he would continue exercising his free speech rights. Defendant DeGrange's partner spoke with Defendant Leon and was handed the Exclusion Notice. However, both officers concluded that Mr. Lewis was not on Defendant District's property and, instead, was on the public right of way. Eventually, Defendant DeGrange left as there was no basis to believe that Mr. Lewis was breaking any law. Mr. Lewis stood silently holding his sign for a little while after Defendant DeGrange's departure, then left.

46.     On October 6, 2022, Mr. Lewis returned to protest outside of Defendant District's Basil T. Knight Administration Building. He stood in the same location as the previous day, carried the same sign, and wore the same t-shirt. Mr. Lewis stood silently in protest for a while and then left without incident.

47.     At no point, on any day that he protested near Defendant District's property a public places, or otherwise, did Mr. Lewis interfere with any of the operations of Defendant District, disrupt any student's learning, or obstruct any passageways into any of Defendant

District's buildings. Mr. Lewis simply exercised his constitutional rights to protest at public places and petition his government via email (albeit while using profanity). Despite this, Mr. Lewis remains banned from Defendant District's property to this day. Upon information and belief, Defendant Eret conspired with Defendant Leon to issue the Exclusion Notice in direct retaliation for Mr. Lewis' free speech and petitioning activity, including his protests and his emails.

48.     Since October 6, 2022, Mr. Lewis has not returned to protest on public property near Defendant District's buildings. He has been deterred from doing so by the issuance of the criminal charges against him and the issuance of the Exclusion letter.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – First Amendment Violation
### Free Speech
*Plaintiff Against All Defendants*

49.     Plaintiff hereby incorporates all other paragraphs of this First Amended Complaint as if fully set forth herein.

50.     At all times relevant to this First Amended Complaint, Defendants were acting under the color of law.

51.     Plaintiff was engaged in protected speech.

52.     Plaintiff's speech was on a matter of public concern and did not violate any law.

53.     Defendants' conduct would chill a person of ordinary firmness from exercising his or her free speech rights.

54.     Defendants' conduct was a content-and/or viewpoint-based restriction on Plaintiff's speech.

55.     Plaintiff's speech occurred at a traditional public forum.

56.     The letter of exclusion acts as a prior restraint on Plaintiff's speech.

57.     Defendants' conduct violated clearly established rights belonging to Plaintiff of which reasonable persons in Defendants' position knew or should have known.

58.     The letter of exclusion was imposed on Plaintiff due to the policies of Defendant District.

59.     The letter of exclusion was imposed on Plaintiff by Defendant Leon who had been delegated final policymaking authority with respect to the issue the letter of exclusion by Defendant District.

60.     Defendants' conduct was motivated by evil motive or intent and/or involved reckless or callous indifference to the federally protected rights of Plaintiff.

61.     Defendants' actions and/or omissions caused, directly and proximately, Plaintiff to suffer damages. The acts and inactions of Defendants caused Plaintiff damages in that he was prevented from speaking freely on a matter of public concerns, among other injuries, damages, and losses.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – First Amendment Violation**
**Right To Petition**
*Plaintiff Against All Defendants*

62.     Plaintiff hereby incorporates all other paragraphs of this First Amended Complaint as if fully set forth herein.

63.     At all times relevant to this First Amended Complaint, Defendants were acting under the color of law.

64.     Plaintiff was engaged in protected petitioning activity.

65.     Plaintiff's speech was on a matter of public concern and did not violate any law.

66.     Defendants' conduct would chill a person of ordinary firmness from exercising his or her petitioning rights.

67.     Defendants' conduct was a content-and/or viewpoint-based restriction on Plaintiff's speech.

68.     Plaintiff's speech occurred at a traditional public forum.

69.     The letter of exclusion acts as a prior restraint on Plaintiff's petitioning activity.

70.     Defendants' conduct violated clearly established rights belonging to Plaintiff of which reasonable persons in Defendants' position knew or should have known.

71.     The letter of exclusion was imposed on Plaintiff due to the policies of Defendant District.

72.     The letter of exclusion was imposed on Plaintiff by Defendant Leon who had been delegated final policymaking authority with respect to the issue the letter of exclusion by Defendant District.

73.     Defendants' conduct was motivated by evil motive or intent and/or involved reckless or callous indifference to the federally protected rights of Plaintiff.

74.     Defendants' actions and/or omissions caused, directly and proximately, Plaintiff to suffer damages. The acts and inactions of Defendants caused Plaintiff damages in that he was prevented from speaking freely on a matter of public concerns, among other injuries, damages, and losses.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – First Amendment**
**Retaliation**
*Plaintiff Against All Defendants*

75.     Plaintiff hereby incorporates all other paragraphs of this First Amended Complaint as if fully set forth herein.

76.     At all times relevant to this First Amended Complaint, Defendants were acting under the color of law.

77.     Plaintiff was engaged in protected free speech and petitioning activity.

78.     Plaintiff's speech was on a matter of public concern and did not violate any law.

79.     Defendants responded to Plaintiff's protected speech and petitioning activity with retaliation.

80.     Defendants' retaliatory actions were substantially motivated by Plaintiff's exercise of his free speech and petitioning rights.

81.     Defendants sought to punish Plaintiff for exercising his free speech and petitioning rights, to silence his future speech and petitioning, to stop him from continuing to speak and petitioning, and to restrict his freedom of expression, along with the future speech and expression of others.

82.     Defendants' retaliatory actions would chill a person of ordinary firmness from engaging in protected free speech and petitioning activity.

83.     Defendants' conduct violated clearly established rights belonging to Plaintiff of which reasonable persons in Defendants' position knew or should have known.

84.     The letter of exclusion was imposed on Plaintiff due to the policies of Defendant District.

85.     The letter of exclusion was imposed on Plaintiff by Defendant Leon who had been delegated final policymaking authority with respect to the issue the letter of exclusion by Defendant District.

86.     Defendants' conduct was motivated by evil motive or intent and/or involved reckless or callous indifference to the federally protected rights of Plaintiff.

87.     Defendants' action and/or omissions caused, directly and proximately, Plaintiff to suffer damages. The acts and inactions of Defendants caused Plaintiff damages.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Fourth Amendment Violation**
**Malicious Prosecution**
*Plaintiff Against Defendants Eret, Leon, and DeGrange*

88.     Plaintiff hereby incorporates all other paragraphs of this First Amended Complaint as if fully set forth herein.

89.     At all times relevant to the subject matter of this First Amended Complaint, Defendants were acting under color of state law.

90.     Defendants initiated charges against Plaintiff, knowing that there was no basis for those charges or probable cause to believe Plaintiff had committed any crime.

91.     No probable cause supported Plaintiff's original citation and prosecution.

92.     Defendants' motivation was not to bring to justice a person thought to have committed a crime but for the purpose of punishing Plaintiff for engaging in protected speech and petitioning activity.

93.     Defendants acted with malice in initiating the charges against Plaintiff and his continued prosecution.

94.     The charges against Plaintiff resulting from the actions/omissions of Defendants described herein were dismissed under circumstances indicating innocence; thus, the original action against Plaintiff terminated in his favor.

95.     Defendants' conduct was motivated by evil motive or intent and/or involved reckless or callous indifference to the federally protected rights of Plaintiff.

96.     Defendants who did not personally initiate the malicious prosecution of Plaintiff failed to intervene to prevent the other Defendants from doing so.

97.     Defendants' conduct violated clearly established rights belonging to Plaintiff of which a reasonable person in their positions knew or should have known.

98.     As a legal and proximate result of Defendants' actions or omissions described herein, including the unconstitutional custom, policy, or practice of making arrests without probable cause described above from which this malicious prosecution claim arises, Plaintiff has suffered and continues to suffer humiliation, lost earnings, emotional distress, loss of enjoyment of life, and other significant injuries, damages and losses.

### FIFTH CLAIM FOR RELIEF[1]
### C.R.S. § 13-21-131 — Colo. Const. Art. II, Section 10
### Freedom of Speech
*Plaintiff Against Defendant DeGrange*

99.     Plaintiff hereby incorporates all other paragraphs of this First Amended Complaint as if fully set forth herein.

---

[1] Plaintiff brings these claims in good faith for the express purpose of extending and/or modifying existing precedent relating to C.R.S. § 13-21-131.

100.     Defendant acted under color of state law, and within the course and scope of his employment, in his capacity as a law enforcement officer at all times relevant to the allegations in this First Amended Complaint.

101.     Defendant is a "peace officer" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

102.     The Free Speech Clause to the Colorado Constitution provides that "[n]o law shall be passed impairing the freedom of speech; every person shall be free to speak, write or publish whatever he will on any subject, being responsible for all abuse of that liberty; and in all suits and prosecutions for libel the truth thereof may be given in evidence, and the jury, under the direction of the court, shall determine the law and the fact." Colo. Const. Art. II, Section 10.

103.     The free speech rights protected by Colo. Const. Art. II, Section 10 are more expansive than those protected by the First Amendment to the United States Constitution.

104.     Plaintiff was engaged in protected speech.

105.     Plaintiff's speech was on a matter of public concern and did not violate any law.

106.     Defendant's conduct would chill a person of ordinary firmness from exercising his or her free speech rights.

107.     Defendant's conduct was a content-and/or viewpoint-based restriction on Plaintiff's speech.

108.     Plaintiff's speech occurred at a traditional public forum.

109.     The letter of exclusion acted as a prior restraint on Plaintiff's speech.

110.     Defendant's retaliatory actions were substantially motivated by Plaintiff's exercise of his free speech rights.

111.    Defendant's conduct was motivated by evil motive or intent and/or involved reckless or callous indifference to the federally protected rights of Plaintiff.

112.    Defendant's actions and/or omissions caused, directly and proximately, Plaintiff to suffer damages. The acts and inactions of Defendant caused Plaintiff damages in that he was prevented from speaking freely on a matter of public concerns, among other injuries, damages, and losses.

**SIXTH CLAIM FOR RELIEF[2]**
**C.R.S. § 13-21-131 — Colo. Const. Art. II, Section 24**
**Right To Petition**
*Plaintiff Against Defendant DeGrange*

113.    Plaintiff hereby incorporates all other paragraphs of this First Amended Complaint as if fully set forth herein.

114.    Defendant acted under color of state law, and within the course and scope of his employment, in his capacity as a law enforcement officer at all times relevant to the allegations in this First Amended Complaint.

115.    Defendant is a "peace officer" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

116.    The Petitioning Clause to the Colorado Constitution provides that "'[t]he people have the right peaceably to assemble for the common good, and to apply to those invested with the powers of government for redress of grievances, by petition or remonstrance." Colo. Const. Art. II, Section 24.

117.    Plaintiff was engaged in protected petitioning activity.

---

[2] Plaintiff brings these claims in good faith for the express purpose of extending and/or modifying existing precedent relating to C.R.S. § 13-21-131.

118.     Plaintiff's speech was on a matter of public concern and did not violate any law.

119.     Defendant's conduct would chill a person of ordinary firmness from exercising his or her petitioning rights.

120.     Defendant's conduct was a content-and/or viewpoint-based restriction on Plaintiff's speech.

121.     Plaintiff's speech occurred at a traditional public forum.

122.     The letter of exclusion acted as a prior restraint on Plaintiff's petitioning activity.

123.     Defendant's retaliatory actions were substantially motivated by Plaintiff's exercise of his petitioning rights.

124.     Defendant's conduct was motivated by evil motive or intent and/or involved reckless or callous indifference to the federally protected rights of Plaintiff.

125.     Defendant's actions and/or omissions caused, directly and proximately, Plaintiff to suffer damages. The acts and inactions of Defendant caused Plaintiff damages in that he was prevented from speaking freely on a matter of public concerns, among other injuries, damages, and losses.

**SEVENTH CLAIM FOR RELIEF[3]**
**C.R.S. § 13-21-131**
**Colo. Const. Art. II, Section 7 & Colo. Const. Art. II, Section 25**
**Malicious Prosecution**
*Plaintiff Against Defendant DeGrange*

126.     Plaintiff hereby incorporates all other paragraphs of this First Amended Complaint as if fully set forth herein.

---

[3] Plaintiff brings these claims in good faith for the express purpose of extending and/or modifying existing precedent relating to C.R.S. § 13-21-131.

127. Defendant acted under color of state law, and within the course and scope of his employment, in his capacity as a law enforcement officer at all times relevant to the allegations in this First Amended Complaint.

128. Defendant is a "peace officer" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

129. Plaintiff had a protected interest under the Colorado Constitution against being subjected to malicious prosecution.

130. Defendant initiated charges against Plaintiff, knowing that there was no basis for those charges or probable cause to believe Plaintiff had committed any crime.

131. No probable cause supported Plaintiff's original citation and prosecution.

132. Defendant's motivation was not to bring to justice a person thought to have committed a crime but for the purpose of punishing Plaintiff for engaging in protected speech and petitioning activity.

133. Defendant acted with malice in initiating the charges against Plaintiff and his continued prosecution.

134. The charges against Plaintiff resulting from the actions/omissions of Defendant described herein were dismissed under circumstances indicating innocence; thus, the original action against Plaintiff terminated in his favor.

135. Defendant's conduct was motivated by evil motive or intent and/or involved reckless or callous indifference to the federally protected rights of Plaintiff.

136. Defendant's conduct violated clearly established rights belonging to Plaintiff of which a reasonable person in their positions knew or should have known.

137.     As a legal and proximate result of Defendant's actions or omissions described herein, including the unconstitutional custom, policy, or practice of making arrests without probable cause described above from which this malicious prosecution claim arises, Plaintiff has suffered and continues to suffer humiliation, lost earnings, emotional distress, loss of enjoyment of life, and other significant injuries, damages and losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award him all relief as allowed by law, including, but not limited to the following:

a.   All appropriate relief at law and equity;

b.   Declaratory relief;

c.   Injunctive relief;

d.   Actual economic damages as established at trial;

e.   Compensatory damages, including, but not limited to those for past and future pecuniary and non-pecuniary losses, physical and mental pain, humiliation, fear, anxiety, loss of enjoyment of life, loss of liberty, privacy, and sense of security and individual dignity, and other non-pecuniary losses;

f.   Punitive damages for all claims as allowed by law in an amount to be determined at trial;

g.   Issuance of an Order mandating appropriate equitable relief, including, but not limited to:

    1.   Issuance of a formal written apology from each Defendant to Plaintiff;

2. The imposition of policy changes designed to avoid future similar misconduct by Defendants;

3. Mandatory training designed to avoid future similar misconduct by Defendants;

4. Retraction of the letter of exclusion;

h. Pre-judgment and post-judgment interest at the highest lawful rate;

i. Attorney's fees and costs; and

j. Such further relief as justice requires.

## **REQUEST FOR TRIAL BY JURY**

Plaintiff demands a jury trial on all issues so triable.

Dated this 25th day of August 2023.

KILLMER, LANE & NEWMAN, LLP

*s/ Andy McNulty*

_____

David A. Lane
Andy McNulty
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001
dlane@kln-law.com
amcnulty@kln-law.com

ATTORNEYS FOR PLAINTIFF