IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01397-CSN-NRN

KYLE LEWIS,

    Plaintiff,

v.

MESA COUNTY VALLEY SCHOOL DISTRICT 51;
TAMMY ERET, in her individual capacity;
TIM LEON, in his individual capacity; and
BRIAN DEGRANGE, in his individual capacity,

    Defendants.

---

### REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

---

Defendants Mesa County Valley School District 51 (the District"), Tammy Eret and Tim Leon (collectively "District Defendants"), by and through their undersigned counsel, hereby file their Reply in Support of the Motion to Dismiss Plaintiff's First Amended Complaint, as follows:

### I.    STATEMENT OF RELEVANT ALLEGED FACTS

Plaintiff Kyle Lewis ("Lewis") does not dispute any of the facts asserted by the District Defendants. Instead, he reiterates all the allegations in his Amended Complaint. As explained in the Motion to Dismiss (the "Motion"), and herein, many of the asserted facts are nothing more than conclusory allegations, which need not be considered by the Court. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II.     LEGAL ANALYSIS

**A. Lewis' First Amendment § 1983 Prior Restraint Claim Fails.**

*1. Lewis' speech did not involve a matter of public concern.*

The District Defendants argued that Lewis failed to plead facts showing that his speech involved a matter of public concern. In response, Lewis asserts that his speech involved a matter of public concern because it was "directed at [the] District's policies and its officials' actions." "A matter is of public concern...if it is 'of interest to the community, whether for social, political, or other reasons.'" *Arndt v. Koby*, 309 Fed 1247, 1252 (10th Cir. 2002). Speech of purely personal interest is not of public concern. *Id*.

Lewis' claim fails because the allegations demonstrate that Lewis' speech addressed purely personal concerns, namely, his ability to participate in his children's education, which he asserts was his "sole goal." Lewis' emails and the sign he held at the BTK building voiced purely personal concerns about his ability to participate in his children's education. Lewis' conclusory allegations that this speech involves a matter of public concern need not be considered. *Twombly*, 550 U.S. at 555.

*2. Lewis' speech was not restrained.*

The District Defendants also argued that Lewis' claim fails because he did not plead facts showing that his speech was actually restrained. The alleged facts show that Lewis was only precluded from being physically present on some District property. He was not precluded from exercising his Free Speech rights through any other venue such as social media, email, protesting at his children's schools, protesting on public streets and sidewalks, writing letters or even editorials, going to the media, holding meetings with community members or any other form of

speech. The fact that the District issued a letter that prohibited him only from entering onto certain District property did not, as a matter of law, restrict Lewis' speech because he could still express himself in other venues. *See Smith v. Plati*, 258 F.3d 1167, 1177 (2001) (plaintiff's speech was not restricted even though defendant caused plaintiff to be detained and ticketed for trespassing; denied defendant resources routinely given to media and fans; prevented plaintiff from talking to coaches; excluded him from football practices; required him formally to request and pay for materials given freely to the public; and prevented him from distributing materials at a university athletic event because defendant's actions did not preclude plaintiff from exercising his Free Speech rights in through other avenues); *see also McCook v. Springer Sch. Dist.*, 44 Fed.Appx. 896, 910-11(10th Cir. 2002) (plaintiffs, who were issued a letter excluding them from school district property, failed to state a First Amendment claim because they had other venues to exercise their Free Speech).

Lewis does not plead or argue that any action by the District, Eret or Leon precluded him from exercising his Free Speech rights in other venues. To the contrary, he admits that he continued to exercise his rights after being given both the Letter and the citation by DeGrange.

3. *Lewis' speech was not chilled.*

Finally, the District Defendants argued that Lewis' prior restraint claim failed because he failed to plead facts showing his speech was actually chilled. Lewis does not dispute this argument, nor can he do so, as he continued to go to District property and inundate Eret with emails after receiving the Letter and after being cited by DeGrange. Instead, he argues that he is not required to show that his speech was actually chilled, relying on *Smith v. Plati*. The language to which Lewis cites in *Smith* deals with a First Amendment retaliation claim, not a prior restraint claim. *See Smith*, 258 F.3d at 1177. As discussed in the Motion, First Amendment retaliation claims are

3

analyzed using a different standard than prior restraint claims. Moreover, in the years since *Smith* was decided, courts have repeatedly held that to establish a prior restraint claim, a plaintiff must show that his speech was actually chilled. *See Peterson v. Williams,* 2022 WL 1421959, *6 (10th Cir. 2022), *citing Brammer-Hoelter v. Twin Peaks Charter Acad*., 602 F.3d 1175, 1182 (10th Cir. 2010)(dismissing prior restraint claim because "nothing in the record indicat[ed] [plaintiffs'] speech...was altered or deterred in any way" by the restraint); *Abyeta v. Warfield*, 2012 WL 13076176, (D. N.M. 2012)(for prior restraint "the court should consider whether the restraint actually chilled Plaintiffs' speech and association") (internal citations omitted); *Carpenter v. Sch. Dist. No. 1, City and Cnty. of Denver*, 2017 WL 1407041, *7(D. Colo. 2017) ("to assert a claim of unlawful prior restraint, a plaintiff must establish…that [he] suffered some kind of injury from the employer's directive not to speak—i.e., that the restraint 'actually chilled' [his] speech...").

    4.  *Eret and Leon are entitled to qualified immunity from Lewis' prior restraint claim*.

Lewis cannot show that his constitutional rights were violated because he was not subjected to a prior restraint. As explained in the Motion and above, Lewis was only prohibited from entering certain District property. He was free to continue to express his complaints in any other avenue, which he did.

Moreover, there is no law that would have put Eret or Leon on notice that issuing the Letter would violate Lewis' constitutional rights. Lewis argues that his right to be free from prior restraint was clearly established. However, a plaintiff must show that the official would have known that his "particular conduct" in the situation he confronted violated a plaintiff's constitutional right, not just that the right itself was clearly established. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011); ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth

4

Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."); *Douglas v. Dobbs*, 419 F.3d 1097, 1101 (10th Cir. 2005) ("Warning against rights asserted at too high a level of generality, the Supreme Court has made clear that the relevant inquiry must be undertaken in the specific context of the case."); *Maestas v. Lujan*, 351 F.3d 1001, 1007 (10th Cir. 2003) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). Lewis fails to cite any law that would have put Leon or Eret on notice that issuing the Letter restricting Lewis from entering on to certain District property would constitute a prior restraint. Nor can he do so, because the law provides that such exclusion letters are permissible. *See Smith*, 258 F.3d at 1177; *McCook*, 44 Fed.Appx. at 910-11.

**B. Lewis' Retaliation and Right to Petition Claims Pursuant to § 1983 Fail.**

The District Defendants argued that Lewis' First Amendment Retaliation and Right to Petition claims fail because he failed to allege facts showing that he engaged in protected speech. Specifically, the District Defendants argued that Lewis' insulting language towards Eret was not protected. In response, Lewis argues that profanity is protected by the First Amendment.

Contrary to Lewis' assertion, the District Defendants did not argue that Lewis' speech was not entitled to First Amendment protection merely because it contained profanity. The District Defendants argued that calling Eret a "GRIMY fucking cunt" and "fucking stupid" was not entitled to First Amendment protection because it was nothing more than insulting, personal abuse. Lewis cites no law holding that insulting, personal abuse is protected by the First Amendment. Nor can he do so, because it is not. *See Klen v. City of Loveland*, 661 F.3d 498, 510 (10th Cir. 2011) ("Certainly, words that constitute a 'direct personal insult or an invitation to exchange fisticuffs'

can be considered fighting words."), *citing Texas v. Johnson,* 491 U.S. 397, 409 (1989); *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) ("some speech, such as fighting words and obscenity, is not protected by the First Amendment at all."); *Petrossian v. Collins*, 479 Fed.Appx. 409, 410 (3rd Cir. 2012) (a note containing "insulting language" about librarian was not protected speech); *Cheatwood v. City of Oxford*, 785 F.Supp. 926, 938 (N.D. Ala. 1992) (speech that is "rude or insulting" in character is not protected), *citing Dartland v. Metropolitan Dade County,* 681 F.Supp. 1539 (S.D.Fla.1988),rev'd on other grounds; *Lockett v. Suardini,* 526 F.3d 866, 874 (6th Cir.2008) (insulting accusation about official during hearing was not protected speech).

Moreover, contrary to his conclusory allegation, Lewis' insults to Eret are, on their face, fighting words. *Klen*, 661 F.3d at 510. Indeed, calling someone a "grimy fucking cunt" is likely to produce a violent response.

    3. *Leon and Eret are entitled to qualified immunity from Lewis' claims.*

Lewis does not allege facts showing that Leon participated in the decision to charge Lewis with harassment. Rather, he alleges that Leon introduced DeGrange to Eret and told DeGrange that Lewis' emails contained obscene language. Merely introducing Eret to a police officer and offering his opinion of Lewis' language did not in any way violate Lewis' constitutional rights. Nor is there any law that would have put Leon on notice that introducing Eret to DeGrange and expressing his opinion of the language would violate Lewis' constitutional rights. As explained above, Lewis cannot rest on the assertion that the right to petition is clearly established. Rather, he must show that there is law that would put Eret on notice that reporting what she believed was criminal harassment to the police would violate clearly established law. He does not.

6

As to the Letter, issuing a letter restricting Lewis' access to some District property did not violate his constitutional rights. *See McCook*, 44 Fed.Appx. at 910-11; *Plati*, 258 F.3d at 1177. Nor is there clearly established law that would have put Leon on notice that issuing the Letter would violate Lewis' rights.

As to Eret, there are no allegations showing that she was involved in issuing the Letter. Nor did reporting her concerns about Lewis' abusive speech to DeGrange violate Lewis' rights in derogation of clearly established law because Eret had a constitutional right to do so. *Meyer v. Bd. of Cnty. Com'rs of Harper Cnty., Okla.*, 482 F.3d 1232, 1243 (10th Cir. 2007) ("filing a criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right to petition").

### C. Lewis' claims pursuant to § 1983 fail because he did not plead facts demonstrating municipal liability.

With respect to all of Lewis' § 1983 claims, the District argued that Lewis failed to plead facts showing that his constitutional rights were violated pursuant to an official policy or custom of the District or by a final policymaker for the District. In response, Lewis argues that either Superintendent Hill was the final policymaker with respect to the Letter or that Leon had been delegated with final policymaking authority. These arguments fail. Lewis asserts only a conclusory allegation that Hill approved the Letter; however, he does not plead facts supporting this allegation. Conclusory allegations need not be considered by the Court. *Twombly*, 550 U.S. at 555. Nor do the allegations demonstrate that Leon had been delegated final policymaking authority. To the contrary, District Policy KFA-R provides that Leon did not have final policymaking authority because he was required to get permission prior to issuing any exclusion letter. *See* Ex. C to the Motion, p. 8 (Doc. 25-3).

7

To salvage his claims, Lewis asserts that the District had a custom of retaliating against him. In order to demonstrate an official custom, Lewis must show the alleged unconstitutional practice was "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996); *Goff v. City of Tulsa*, 202 F.3d 282, *2 (10th Cir. 1999). To establish a custom, the actions must be "persistent and widespread…practices of [school district] officials." *Lankford*, 73 F.3d at 286. Furthermore, the official charged with the constitutional violation "must also have 'final policy making authority' with respect to the acts in question as a matter of state law." *Id*. The allegations do not demonstrate that the District had a practice that was "so widespread" that it had the force of law. To the contrary, Lewis merely alleges that two District officials, Leon and Eret, engaged in unconstitutional conduct. The fact that only two employees in the entire District engaged in alleged unconstitutional conduct does not demonstrate a widespread practice with the force of law. Nor do the allegations show that Eret or Leon were District final policymakers. Lewis does not allege or argue that Eret was a final policymaker for the District, and, as explained above, Leon was not.

Lewis also argues that his constitutional rights were violated pursuant to Policy KFR because the Letter was based "exclusively" on Policy KFR, which he asserts prohibits "using profanity in…interactions with public officials." However, contrary to Lewis' assertion, Policy KFR does not condone retaliation or infringe upon the First Amendment in any way. Rather, Policy KFR requires that "All persons using or appearing at events conducted upon District owned or controlled property" abide by a code of conduct while appearing at such events. The code of conduct provides, in part, that individuals who are on District property "refrain" from the "use or display of profanity or abusive language." It does not, as Lewis asserts, "ban using profanity in

interactions with…District officials." Rather, it directs individuals to refrain from using profanity and abusive language only while on District property. As explained above, limiting abusive and profane speech only on District property does not infringe upon the First Amendment because individuals are free to exercise protected speech through numerous other avenues. *See Smith*, 258 F.3d at 1177; *McCook*, 44 Fed.Appx. at 910-11.

### D.  Lewis' Malicious Prosecution Claim against Eret and Leon Fails.

In the Motion, Leon asserted that Lewis failed to plead facts showing that Leon caused Lewis to be prosecuted or acted with malice. In response, Lewis asserts that Leon "caused Lewis' prosecution by recruiting…DeGrange to arrest Lewis." Lewis' argument is not supported by his allegations. The only conduct Lewis alleges that Leon engaged in, with relation to DeGrange, is that Leon arranged a meeting between DeGrange and Eret because Eret asked him to, and Leon told DeGrange that Lewis had used "obscene" language in his emails. The mere fact that Leon put DeGrange in contact with Eret did not "cause" Lewis to be prosecuted or demonstrate malice. Indeed, Lewis alleges that DeGrange made the decision to issue a citation to Lewis only after he spoke with Eret and read Lewis' emails. He further alleges that Eret, not Leon, was particularly upset by the language in the emails. The fact that Leon referred a District employee to the police after receiving a complaint from her does not give rise to a malicious prosecution claim.

Lewis attempts to salvage his claim by arguing that Leon misrepresented that Lewis used "obscene" language. This argument does not salvage Lewis' claim, because the allegations show that DeGrange did not rely on Leon's description of the language. Rather, DeGrange reviewed the emails and talked to Eret. Moreover, Leon's use of the word "obscene" is not a misrepresentation. "Obscene" is defined by the Mirriam-Webster Dictionary as "containing or being language

regarded as taboo in polite usage." https://www.merriam-webster.com/dictionary/obscene. The Collins Dictionary states that something is "obscene" if one "disapprove[s] of it very strongly and consider[s] it to be offensive..." https://www.collinsdictionary.com/us/dictionary/english/obscene. Lewis' language falls squarely within these definitions.

As to Eret, Lewis failed to plead facts showing she acted with malice, or facts demonstrating that she did not believe probable cause existed to charge Lewis with harassment. As fully explained in the Motion, the factual allegations demonstrate that Eret reported Lewis' conduct to the police, which she had every right to do under the First Amendment, because she believed his emails were harassing. Based on the plain language of § 18-9-111(1)(h), which provides that harassment includes repeated insults, taunts, challenges, or communications made in offensively coarse language to another in a manner likely to provoke a violent or disorderly response, Eret reasonably believed that probable cause existed to report Lewis to DeGrange. The fact that DeGrange chose to charge Lewis under a different section of the statute does not demonstrate that Eret did not believe he had engaged in criminal harassment. There are no allegations that Eret was involved in determining which section of the statute DeGrange would cite. Lewis does not even allege that Eret knew what subsection of the statute DeGrange used for the charge; indeed, she did not. Lewis cannot impose liability on Eret for DeGrange's choice of statutory citations.

WHEREFORE, for the reasons set forth above, the Defendants respectfully request that this Court dismiss Lewis' First Amended Complaint with prejudice, for failure to state a claim upon which relief may be granted.

RESPECTFULLY SUBMITTED this 9th day of October, 2023.

SEMPLE, FARRINGTON, EVERALL & CASE, P.C.

By: *s/ Holly Ortiz*
Holly E. Ortiz
M. Johnathan Koonce
1120 Lincoln Street, Suite 1308
Denver, CO  80203
(303) 595-0941
hortiz@semplelaw.com
jkoonce@semplelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of October, 2023, a correct copy of the foregoing **REPLY IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** was filed via CM/ECF and served on the following:

Andy McNulty
Newman | McNulty
andy@newman-mcnulty.com

*Attorneys for Plaintiff*

Paul Sukenik
Elkus and Sisson, P.C.
psukenik@elkusandsisson.com

*Attorney for Defendant Brian DeGrange*

By: *s/ Elaine Montoya*